HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY A HEDGES,<br><br>             Plaintiff,<br><br>   v.<br><br>FOSS MARITIME COMPANY,<br><br>             Defendant. | CASE NO. C10-5046 RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL REINSTATEMENT OF CURE AND DENYING DEFENDANT'S MOTION FOR DECLARATORY RELIEF |

## I.  INTRODUCTION

THIS MATTER is before the Court on Plaintiff Jeffrey Hedges' Motion to Compel Reinstatement of Cure [Dkt. #73] and on Defendant Foss Maritime's Motion for Declaratory Relief [Dkt. #76]. Hedges injured his lower back while working for Foss as a deckhand on a tugboat.  He is suing Foss for providing an unseaworthy vessel and for negligently requiring him to handle a heavy line without adequate assistance. He also claims that Foss negligently failed to provide reasonably prompt medical attention for his injuries.

Hedges has undergone five surgeries since the accident but continues to suffer from ongoing lower back pain and disability. He now seeks an order compelling Foss to pay for a trial spinal cord simulator procedure. Foss seeks a contrary determination that it does not have to pay for the procedure. Because Foss has failed to prove that Hedges has unequivocally reached

maximum cure, Hedges' motion to compel is **GRANTED** and Foss' motion for declaratory relief is **DENIED.**

## II. BACKGROUND

Hedges suffered a herniated disk while handling a heavy line working as a deckhand on a Foss tug on February 25, 2009. Foss immediately began to pay for Hedges' medical treatment, as it was required. After five surgeries, however, Hedges still has ongoing pain in his lower back. He was referred to Dr. Ryder Gwinn to determine if he is a candidate for a spinal cord stimulator ("SCS"). An SCS is an implanted, programmable neurotransmitter that interrupts pain signals to the brain by delivering small electrical impulses to the spinal column through stimulation leads.

Dr. Gwinn determined that Hedges would be an excellent candidate for the procedure. To ensure that the procedure is effective, however, he recommended that Hedges first undergo a trial period. During the trial, the patient wears a trial stimulator while engaging in normal activities. The patient then keeps a diary of how the stimulator is affecting his or her quality of life and everyday functioning. If the patient experiences at least a fifty (50) percent improvement in pain and function, they then qualify for permanent implantation. Dr. Gwinn referred Hedges to Dr. Glen David for the trial procedure.

Hedges contacted Foss and requested that it pay for the treatment. Before Foss agreed to pay, it wrote to Dr. David and asked him a number of questions to better understand the treatment being provided. Dr. David responded with a letter detailing the treatment and his reasons for why Hedges was an excellent candidate for SCS. He described the procedure as non-curative, but did state that SCS was the most effective choice for treating Hedges' pain and improving his function. Three weeks later Dr. David sent a follow up letter which provided the estimated costs of treatment. Dr. David later rescinded his non-curative label over the procedure

because he claimed to not be aware of the term's legal definition.  In a declaration, Dr. David testified that the SCS trial was curative as it is intended to improve Hedges' physical condition and overall ability to function.

Not convinced, Foss had its own expert, Dr. John Loeser, evaluate Hedges' medical records and candidacy for SCS. In his report, Dr. Loeser stated that SCS was a palliative technique that did not address the cause of the patient's pain. Consequently, Foss refused to authorize treatment.

In response to Foss' refusal to pay, Hedges filed a motion to compel reinstatement of cure, arguing that the curative/palliative nature of the treatment is irrelevant and that Foss must continue to pay for his medical treatment until he has reached maximum cure. Foss countered by filing a motion for declaratory relief. Foss argues that the SCS treatment is palliative in nature and, therefore, not covered.

### III.   DISCUSSION

A ship owner's obligation to provide "maintenance and cure" has its roots in ancient maritime law. *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S. Ct. 997, 8 L.Ed.2d 88 (1962). The term refers to the provision of, or payment for, food and lodging ('maintenance') as well as any necessary health-care expenses ('cure') incurred during the period of recovery from an injury or malady. *Whitman v. Miles*, 387 F.3d 68, 71 (1st Cir. 2004) (citing *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 454 (1st Cir.1996)). A ship owner is obligated to bring a seaman to port for treatment and is required to pay for maintenance and cure whenever a seaman is injured in the service of his or her vessel. *Vaughn*, 369 U.S. at 532. A seaman is entitled to maintenance and cure until he or she reaches "maximum cure"—i.e., a recovery as complete as the injury allows. *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298 (9th Cir.1966). If any doubts exist as to

whether a seaman is entitled to coverage, whether the medical treatment is necessary, or whether maximum cure has been obtained, courts have resolved disputes in favor of the seaman and in favor of granting the payment of medical expenses. *Moore v. The Sally J.*, 27 F. Supp. 2d 1255, 1262 (W.D. Wash. 1998) (citing *Vella v. Ford Motor Company*, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682, 1975 A.M.C. 563 (1975).

Once a seaman shows that he or she is entitled to maintenance and cure, the vessel owner must pay for the injured seaman's treatment until the seaman has obtained maximum cure. *See Gouma v. Trident Seafoods, Inc.,* 2008 U.S. Dist. LEXIS 108278 (W.D. Wa. 2008); *Debbie Flo, Inc. v. Shuman,* 2014 AMC 840 (D.N.J. 2014); *Smith v. Delaware Bay Launch Serv.*, *Inc.*, 972 F. Supp. 836, 848 (D. Del. 1997); *Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 99 (D. Mass. 2007) ("'Maximum medical recovery' constitutes the dividing line which, when reached, allows the ship owner to terminate maintenance and cure"). If the vessel owner wants to stop paying for the treatment, it must prove unequivocally that the seaman has returned to full health or has attained a state from which he or she will not get any better. *Johnson v. Marlin Drilling Co.,* 893 F.2d 77, 79 (5th Cir. 1990); *Sefcik v. Ocean Pride Alaska, Inc*., 844 F. Supp. 1372, 1373 (D. Alaska 1993); *Mabrey v. Wizard Fisheries, Inc.,* 2008 U.S. Dist. LEXIS 9985, 11 (W.D. Wa. 2008). A ship owner will likely not be able to demonstrate unequivocal evidence of maximum cure if there are conflicting medical opinions. *Tullos v. Res. Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir. 1985) ("It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure . . . .") (citing *Vella,* 421 U.S. at 4)*.*

Various jurisdictions have also held that seamen are entitled to all medical treatment prior to maximum medical cure, regardless of whether a particular treatment is curative or palliative. *Nurkiewicz v. Vacation Break U.S.A., Inc.,* 771 So. 2d 1271, 1273 (Fla. Dist. Ct. App. 2000)

1  (citing *Smith v. Delaware Bay Launch Serv., Inc.*, 972 F. Supp. 836, 851 (D. Del. 1997)). Other courts, however, have refused to hold ship owners liable for palliative treatment. *Stanovich v. Jurlin*, 227 F.2d 245, 246 (9th Cir. 1955). Although some "courts have held that a ship owner is only responsible for treatment that is curative in nature, and not for medical care that is solely palliative such as the alleviation of pain and discomfort," *Mabrey,* 2008 U.S. Dist. at 12 (citing *In re RJF Int'l Corp.,* 334 F. Supp. 2d 109, 111 (D. R.I. 2004)), "courts have also recognized that the 'boundary between improvement and palliation' is 'fuzzy,'" *id.* at 12 (citing *In re RJF Int'l Corp.,* 354 F.3d 104, 107 (1st Cir. 2004)). Judge Lasnik, for example, rejected the defense's argument in *Mabrey* that the curative and palliative treatments of a shoulder injury should be distinguished. *Id.* The defendant argued that the cost of medication should be segregated from the cost of other treatment because the medication would only relieve pain. *Id.* at 13. The court instead concluded that the need for pain medication was "more than palliative" in that the medication would help further improve the condition of the shoulder. *Id.* at 13-14. The court required the defendant "to pay for plaintiff's pain management treatment . . . related to his shoulder injury until the plaintiff's treating physicians determined that the plaintiff had reached maximum medical cure." *Id.* at 14.

As stated above, payments for maintenance and cure can only be terminated after the defendant has *unequivocally* demonstrated that maximum cure has been reached. Foss has admittedly failed to argue that Hedges has reached maximum cure. In addition, the plaintiff's expert, Dr. David, is willing to testify that the "spinal cord stimulation is the most effective choice for treating Jeffrey A. Hedges' overall condition by relieving his pain and improving his function." David Decl. at Ex. 3. Thus, Foss has not shown that Hedges has *unequivocally* reached maximum cure.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL REINSTATEMENT OF CURE AND DENYING DEFENDANT'S MOTION FOR DECLARATORY RELIEF - 5

1   Even if the distinction between curative and palliative treatment is relevant before
2  maximum cure has been reached, cure includes all treatment that improves function. A treatment
3  is curative even if the increased function is accomplished primarily through pain relief. Based on
4  Dr. David's expert testimony, the SCS procedure alleviates pain but may also improve Hedges'
5  quality of life and functioning. Therefore, Hedges' motion to compel reinstatement of cure is
6  **GRANTED,** and Defendant Foss Maritime Company's motion for declaratory relief is
7  **DENIED**.
8   Dated this 29th day of January, 2015.

*[signature]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL REINSTATEMENT OF CURE AND DENYING DEFENDANT'S MOTION FOR DECLARATORY RELIEF - 6